IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**HARVEY R. JOHNSON,**

    **Petitioner,**

**v.**                                                    **Civil Action No. 1:19cv189**
                                                                                 **(Judge Kleeh)**

**WARDEN HUDGINS,**

    **Respondent**.

## REPORT AND RECOMMENDATION

### I. Introduction

On October 7, 2019, the *pro se* petitioner, Harvey R. Johnson ("Johnson"), an inmate at FCI Gilmer in Glenville, West Virginia, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging a Bureau of Prisons ("BOP") disciplinary hearing in which he was sanctioned with an unspecified loss of Good Conduct Time ("GCT"). ECF No. 1. On October 15, 2019, pursuant to a Notice of Deficient Pleading, Johnson paid the $5 filing fee. ECF No. 5. On November 14, 2019, Petitioner moved to supplement his petition; by Order entered November 18, 2019, the motion was granted and was docketed as a supplement to the petition ECF Nos. 6, 7, 8.

On August 3, 2020, Petitioner filed a motion for writ of mandamus. ECF No. 10.

By Order entered August 4, 2020, the Respondent was directed to show cause why the writ should not be granted. ECF No. 11.  On August 26, 2020, Respondent filed a Motion to Dismiss or for Summary Judgment with a memorandum in support. ECF Nos. 15, 16. Because Petitioner was proceeding *pro se*, on September 1, 2020, a Roseboro Notice was issued, advising Petitioner of his right to respond to the Warden's dispositive motion. ECF No. 17. On September 11, 2020, Petitioner filed a response in opposition to Respondent's dispositive motion. ECF No. 18.

This matter is pending before the undersigned for an initial review and Report and Recommendation pursuant to LR PL P 2.

## II. Factual and Procedural History[1]

### A. Conviction, Sentence, and Direct Appeal

On August 7, 2002, in the Middle District of Florida, Petitioner and four others were charged in a three-count indictment with the commission of various bank robbery-related crimes. Petitioner was charged in all three counts, and on April 22, 2003, he pled guilty to all three charges without a plea agreement. ECF No. 252. On August 13, 2003, Petitioner was sentenced to a total term of 270 months imprisonment on the three charges. ECF No. 289. Judgment was entered August 15, 2003. ECF No. 291.

On August 19, 2003, Petitioner filed a direct appeal with the Eleventh Circuit Court of Appeals. ECF No. 292. The Eleventh Circuit affirmed on June 23, 2004 in an unpublished opinion. ECF No. 351. Mandate issued July 23, 2004. Id.

Petitioner's anticipated Good Conduct Time release is February 27, 2022.[2]

## III. The Pleadings

### A. The Petition

Petitioner contends that at a February 25, 2019 Disciplinary Hearing Officer ("DHO") hearing on Incident Report No. 3214910 regarding a conviction of a BOP disciplinary Code 312 violation (Insolence Toward Staff), the BOP violated his due process rights, because the evidence

---

[1] Unless otherwise noted, the information in this section is taken from Johnson's criminal docket available on PACER and all ECF numbers are from that case. See United States v. Johnson, No. 6:02cr88-1. Philips v. Pitt Cnty. Mem. Hosp., 572 F. 3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record); Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 21239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

[2] See the BOP's online inmate locator, FEDERAL BUREAU OF PRISONS, FIND AN INMATE, https://www.bop.gov/inmateloc/ (last visited Nov. 9, 2020).

was withheld from him before the DHO hearing and the evidence that was used was insufficient to support a finding of guilt. ECF No. 1 at 5. Petitioner contends that the charge arose out of an improper visual search of his body.³ ECF No. 1-1 at 1 – 2. He also contends that BOP staff violated policy and procedure in performing the search. Id.; see also ECF No. 1-1 at 1 - 2. Further, he contends that the BOP unlawfully revoked an unspecified number of days of his GTC as a result of its decision. Id.

More specifically, Petitioner contends that prior to the DHO hearing, he repeatedly requested and was denied the opportunity to review all the evidence to be used at the hearing to support the alleged code infractions and that therefore, he was prevented him from preparing a defense to the "new modified alleged charge." See ECF No. 1-1 at 1. He attaches two "cop outs" in support of his allegation that he repeatedly sought but was refused access to the evidence against him prior to the DHO hearing. See ECF No. 1-2 at 1 – 2.

In support of his claim that the evidence was insufficient to support the offense conviction, Petitioner contends that § III(D) of the DHO Report says that in addition to the Incident Report and investigation report, the DHO considered a January 18, 2019 memorandum from C. Jarvis, Correctional Systems Officer ("CO"), but that in §V of the DHO report, it says the DHO relied solely on the eyewitness account of the reporting staff member, a "clear[] contradiction" as to what the DHO actually considered in making his findings. ECF No. 1-1 at 1. Petitioner relies on Moore v. Plaster, 266 F.3d 928, 932 - 33 (8th Cir. 2001) for the proposition that a statement of a reporting officer alone is insufficient evidence to infer that a prohibited act was committed. Id.

---

³ The petition does not identify the date on which the incident occurred.

3

Attached to the petition are copies of two Inmate Requests to Staff and an excerpt from BOP Program Statement ("P.S.") 5521.06, Searches of Housing Units, Inmates, and Inmate Work Areas. See ECF Nos. 1-2, 1-3.

It is unclear whether Petitioner exhausted his administrative remedies before filing suit: Petitioner appears to both aver that he did not exhaust his administrative remedies because it was "not required" while also stating that he did in fact present his claim to the BOP prior to filing suit, but that the claim was denied. Id. at 7 - 8.

As relief, Petitioner requests that this Court order the BOP to expunge the Incident Report and restore his GCT. Id. at 8.

In the supplement to his petition, Johnson elaborates on his claim that staff violated BOP policy and procedure by conducting the visual search of his body, arguing that an Accardi Doctrine[4] violation occurred. ECF No. 8 at 1.

**B. Respondent's Motion to Dismiss or for Summary Judgment**

Respondent contends that the petition should be dismissed or summary judgment granted in its favor because Petitioner received the full panoply of due process protections to which he was entitled, as set forth in Wolff v. McDonnell[5] and the evidence supported the disciplinary findings. ECF No. 16 at 6 - 8. Petitioner was initially charged with Refusing to Obey an Order and Making Sexual Proposal, in violation of BOP disciplinary Codes 307 and 206. See Declaration of Michael Gyurke, BOP Discipline Hearing Officer ("DHO") ("Gyurke Decl."), ECF No. 16-1, ¶5 at 2. At the February 25, 2019 DHO hearing, the original charges were ultimately reduced to Insolence Towards a Staff Member, a Code 312 violation. See DHO Report, ECF No. 16-1, § V at 16.

---

[4] The Accardi Doctrine provides that when an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954).

[5] Wolff v. McDonnell, 418 U.S. 539 (1974).

4

Petitioner was sanctioned with the loss of 14 days of GCT and the loss of 3 months of commissary and email. See DHO Report, ECF No. 16-1, § VI at 17.

Further, Respondent argues that Petitioner cannot challenge a visual search in a habeas petition because the same is only cognizable in a civil rights action. ECF No. 16 at 15. Finally, Respondent avers that Petitioner's allegations regarding the BOP's alleged violation of the Accardi Doctrine are unavailing, because such a violation, even if it occurred, does not necessarily constitute a constitutional claim or due process violation; in the context of prison disciplinary actions, the only relevant question is whether the prisoner received the full panoply of due process protections mandated by Wolff. Id.

Respondent concedes that Petitioner exhausted his administrative remedies with regards to this claim. See Gyurke Decl., id., ¶18 at 4.

Attached to Respondent's memorandum in support are a sworn declaration, a copy of the January 18, 2019 Incident Report, and a number of other exhibits. See ECF No. 16-1.

**C. Petitioner's Response in Opposition**

In a seventy-page, hand-written, repetitive response in opposition, filed without leave of Court,[6] Petitioner reiterates his arguments and attempts to refute the Respondent's on the same. ECF No. 18. He attaches a copy of another Inmate Request to Staff [ECF No. 18-1]; a page containing brief hand-written notes [ECF No. 18-2]; a sworn declaration, reiterating the arguments in his response [ECF No. 18-3]; copies of Freedom of Information Act ("FOIA") documents and correspondence [ECF No. 18-4, ECF No. 18-5]; and a copy of a Regional Administrative Remedy Appeal. ECF No. 18-6.

---

[6] In the Roseboro Notice that advised Petitioner of his right to respond, he was specifically directed that "[i]n conformity with Local Rule of Prisoner Litigation Procedure ("LR PL P") 11(b), any memorandum filed by the Petitioner shall not exceed 25 pages." ECF No. 17 at 3.

## IV. Standard of Review

### A. Motion to Dismiss Fed.R.Civ.P. 12(b)(6)

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); *see also* Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (applying the Twombly standard and emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. Edwards v. City of Goldsboro, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. Anheuser-Busch, Inc. v. Schmoke, 63 F.3d 1305, 1312 (4th Cir. 1995), *vacated on other grounds*, 517 U.S. 1206 (1996). In Twombly, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," id. at 555, upheld the dismissal of a Complaint where the plaintiffs did not "nudge[] their claims across the line from conceivable to plausible." Id. at 570. Although courts are to liberally construe *pro se* pleadings, *pro se* pleadings are not exempt from "Twombly's requirement that a pleading contain more than labels and conclusions." Giarratano, 521 F.3d at 304 n.5.

### B. Motion for Summary Judgment, Fed.R.Civ.P. 56

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

6

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed.R.Civ.P. 56(c); Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted).

A *pro se* party's pleadings are generally construed more liberally and held to a less stringent standard than pleadings drafted by an attorney. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). However, even under that deferential standard, this Court can "pierce the veil of a complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989).

### V. Analysis

**Prison Disciplinary Proceedings**

7

Prison disciplinary proceedings are not criminal prosecutions. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Therefore, prisoners do not enjoy "the full panoply of due process rights [in prison disciplinary proceedings that are] due a defendant in . . . [criminal] proceedings." Id. When a prison disciplinary hearing may result in the loss of good time credit, due process requires the following:

> 1) giving the prisoner written notice of the charges at least twenty-four hours before he appears for his disciplinary hearing;
>
> 2) providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;
>
> 3) allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;
>
> 4) permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and
>
> 5) providing impartial fact finders.

Id. at 564-571. However, due process requirements are defined by the United States Constitution, not an agency's regulations or guidelines. Sandin v. Conner, 515 U.S. 472, 485 (1995). Therefore, a violation of an agency regulation alone does not immediately constitute a constitutional claim. United States v. Caceres, 440 U.S. 741, 751-52 (1978).

In this case, the incident at question arose out of a BOP staff member, D.R. Smith's attempt to conduct a body search of the Petitioner at 10:10 a.m. on January 18, 2019. Smith's statement in the Incident Report states:

> On 01-18-2019, inmate Johnson . . . was removed from cell C02-114 and escorted to the shower on the lower range. Staff advised . . . Johnson he had five minutes to shower and return to his cell. After three minutes . . . Johnson was told he had two minutes remaining. Upon completion of the five minutes in the shower, he was told to exit and return to his cell. . . Johnson verbally complained about the time allotted

> and did not exit. He was told repeatedly to exit the shower and return to his cell, which he ignored. After approximately 10 minutes, he exited the shower and returned to his cell. After returning to his cell, I directed him to walk with me to be visually searched.  Once in the visual search area, . . . Johnson was directed to remove his clothing for a visual search. He immediately became argumentative. I instructed . . . Johnson to let me see his hands, inside his mouth, behind his ears, and I instructed him to lift his scrotum. Without doing so, he quickly turned his back to me. I ordered him to turn back around and face me and lift his scrotum again. He then stated in a sexually suggestive manner by shaking his head up and down and smiling, "I see how this is going to go. You want some more of this. You like this, don't you?" After visually inspecting the scrotum area, I instructed him to turn around. He was then ordered to bend over at the waist and spread his butt cheeks. While doing so, . . . Johnson was making his rectum open and close in a rapid manner.

ECF No. 16-1 at 8. Incident Report No. 3214910 was prepared, and a copy of it was provided to Petitioner at 6:20 p.m. the same day. See ECF No. 16-1 at 8. The Incident Report was referred to the Unit Discipline Committee ("UDC"); at the January 22, 2019 UDC hearing, Petitioner's response to the charges was "I did not refuse an order or make a sexual proposal." Id.  The UDC referred the charge to the DHO for further hearing. Id. The same day, Petitioner was notified that a DHO would conduct a hearing on the January 18, 2019 charges of Refusing to Obey an Order and Making Sexual Proposal. See January 22, 2019 Notice of Discipline Hearing Before the (DHO), ECF No. 16-1 at 13.  Johnson signed to acknowledge receiving the same that day. Id.  At 10:50 a.m., Johnson also signed a form acknowledging that BOP staff explained his rights as an inmate facing discipline. See January 22, 2019 Inmate Rights Form, ECF No. 16-1 at 11.

Johnson was also advised of his right to call witnesses and present documentary evidence at the disciplinary hearing. See Notice of Discipline Hearing Before the (DHO); Inmate Rights Form. ECF Nos. 16-1 at 13, 11. However, although Johnson initially indicated that he wished to call a staff representative and witnesses [ECF No. 16-1 at 13], he later declined the opportunity to do both. See id.; see also DHO Report, id. at § II(A), § III(C)(1).

Johnson received a copy of the written DHO report following the disciplinary hearing. See DHO Report, Id. at 17. The report states that Johnson was advised of his rights as an inmate facing discipline. Id. Further, the report outlined the evidence relied upon by the DHO, the DHO's findings, the sanctions imposed, the reasons for the sanctions, and advised Johnson that he could appeal the disciplinary proceedings through the BOP administrative grievance process. Id.

Consistent with 28 C.F.R. § 541.8(b), Petitioner was provided with an independent, impartial hearing officer, Michael Gyurke, who was not a witness, victim, investigator, or otherwise significantly involved in the alleged offense. See DHO Report, ECF No. 16-1 § IX at 17.

The DHO's disciplinary findings were supported by sufficient evidence. "[T]he requirements of due process are satisfied if some evidence supports the decision of the prison disciplinary board to revoke good time credits." Superintendent Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). The standard is satisfied if there is some evidence supporting the conclusion reached by the disciplinary board. Id. In Hill, a prison disciplinary board determined that three inmates violated prison rules by assaulting another inmate. The prison disciplinary board's conclusion was supported by little evidence: a "guard heard some commotion and, upon investigating, discovered an inmate who evidently had just been assaulted. The guard saw three other inmates fleeing together down an enclosed walkway. No other inmates were in the area." Hill, 472 U.S. at 456. Despite little evidence supporting the conclusion, the Supreme Court held that the evidence was sufficient because "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one

reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Hill, 472 U.S. at 457.

Here, the evidence the DHO considered included the information in the Incident Report, the investigation, the eyewitness report of the reporting staff member, the January 18, 2019 Memorandum submitted by C. Jarvis, Correctional Systems Officer, and Johnson's own statement denying the charges. See DHO Report, ECF No. 16-1, § III (D) at 16, §V at id. Ultimately, however, regardless of Petitioner's claims to the contrary, the DHO concluded that the greater weight of the evidence supported a finding that Petitioner had committed the prohibited act of Insolence Towards a Staff Member, a violation of Code 312, which was "reduced from the original charge[s] as this charge was more appropriate." Id., § IV (B), V. at 16. Petitioner was sanctioned with the loss of 14 days of GCT and other restrictions. Id., § VI at 17.

The results of a prison disciplinary proceeding will be upheld so long as there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 455. (1985). When determining whether this standard is satisfied:

> [No] examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence [is needed]. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached . . .

Id. at 457. In this case, the DHO found Petitioner had committed the related act of Insolence Toward a Staff Member, in violation of BOP policy. Petitioner's only defense was that he never refused the staff orders and never made a sexual proposal. The DHO noted that it had

> . . . considered your defense in which you deny making a sexual proposal to the staff member and deny refusing to obey their orders; however, the DHO relied on the eyewitness account of the reporting staff member. In his account of the incident he clearly states that while attempting to conduct a visual search of your person you became argumentative. Furthermore he states that while conducting the visual

11

>search he directed [you] to lift your scrotum and you then proceeded to state "I see how this is going to go. You want some more of this. You like this don't you." Finally he states that he gave you an order to bend at the waist and spread your butt cheeks and while doing so you proceed to make your rectum open and close in a rapid manner. Although you did not specifically make a sexual proposal, your actions and comments during this incident were clearly outside the normal boundaries of appropriate communication with a staff member and were impertinent and irrelevant to your day to day activities.
>
>Therefore, based on the evidence outlined above, the DHO finds the greater weight of the evidence to support you committed the prohibited act of insolence towards a staff member, Code 312.

ECF No. 16-1 at 16 – 17.

Petitioner's claim that he was deprived of an opportunity to prepare a defense before his DHO hearing, because he was convicted of a different offense than what he was originally charged is unavailing. In advancing this argument, Petitioner misapprehends that provision of the Code of Federal Regulations which provides as follows:

>The Discipline Hearing Officer (DHO) will only conduct a hearing on the incident report if referred by the UDC. The DHO's hearing involves the following:
>
>(a) Available dispositions. The DHO will make one of the following decisions after a hearing on the incident report:
>
>>**(1) You committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report;**
>>
>>(2) You did not commit the prohibited act(s) charged; or
>>
>>(3) The incident report will be referred back for further investigation, review, and disposition.

28 C.F.R. § 541.8(a) (emphasis added). The flexibility provided by this regulation recognizes that the description of the alleged wrongdoing contained in the incident report, and not the precise code number violation, actually serves to notify an accused inmate of potential charges. Boyd v. O'Brien, No. 7:08-cv-00289, 2008 WL 2074073, at 7 (W.D. Va. May 14, 2008), *aff'd* 301 F.

App'x 292 (4th Cir. 2008); see also Shakoor v. O'Brien, No. 7:06-cv-00672, 2006 WL 3474331 (W.D. Va. Nov. 30, 2006).

The list of prohibited acts is divided into four separate categories based on severity: Greatest; High; Moderate; and Low. 28 C.F.R. § 541.3. The greatest severity level of prohibited acts begins with the numeral "1." In the instant case, the Incident Report provided that Petitioner repeatedly refused to obey a staff order, and then via verbal and non-verbal means, made a sexual statement to staff, by saying "you like this" and "you want more of this, don't you," all while "winking" his anus at the officer, resulting in charges of Refusing to Obey an Order, Making Sexual Proposal, in violation of BOP disciplinary Codes 307 and 206.

A violation of disciplinary Code 307, Refusing to Obey an Order, can be[7] a Moderate Level Severity Prohibited Act.[8] Making a Sexual Proposal, a violation of disciplinary Code 206, is a High Level Severity Prohibited Act.[9] However, the DHO ultimately found Petitioner guilty of violating Code 312, "Insolence Towards Staff," a Moderate Severity Level Prohibited Act.

---

[7] Refusing to obey an order of any staff member (may be categorized and charged in terms of greater severity, according to the nature of the order being disobeyed, *e.g.* failure to obey an order which furthers a riot would be charged as 105, Rioting; refusing to obey an order which furthers a fight would be charged as 201, Fighting; refusing to provide a urine sample when ordered as part of a drug-abuse test would be charged as 110). See BOP P.S. 5270.09, Inmate Discipline Program, Moderate Level Severity Prohibited Acts.

[8] The available sanctions for moderate level severity prohibited acts are: A. Recommend parole date rescission or retardation; B. **Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended); B.1 Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended**); C. Disciplinary segregation (up to 3 months); D. Make monetary restitution; E. Monetary fine; F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation); G. Change housing (quarters); H. Remove from program and/or group activity; I. Loss of job; J. Impound inmate's personal property; K. Confiscate contraband; L. Restrict to quarters; M. Extra duty. BOP P.S. 5270.09, Inmate Discipline Program (emphasis added).

[9] The available sanctions for high level severity prohibited acts are: A. Recommend parole date rescission or retardation; B. **Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended); B.1 Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended**); C. Disciplinary segregation (up to 6 months); D. Make monetary restitution; E. Monetary fine; F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation); G. Change housing (quarters); H. Remove from program

Petitioner argues that he received inadequate written notice of the actual charge against him because the DHO found him guilty of Code 312, instead of Codes 307 and 206, as charged in the Incident Report, thus violating due process. Admittedly, due process requires that an inmate must receive written notice of a charge against him no less than 24 hours before his disciplinary hearing "in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." Wolff, 418 U.S. at 564. The function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." Id.

Petitioner does not dispute that he received the incident report detailing the conduct in question well in advance of the 24-hour minimum requirement. However, construing Petitioner's allegations liberally, he alleges that he did not receive adequate notice of the charge because the Incident Report indicated violations of Codes 307 and 206 and the DHO found him guilty of committing the prohibited act of Code 312. However, the Incident Report plainly notified Petitioner that the charges against him arose from the January 18, 2019 incident when Petitioner repeatedly refused to obey staff orders, made insulting non-verbal and verbal statements constituting sexual innuendo while "winking" his anus at staff during a visual body search. Those "acts" were the basis of the disciplinary charges, and the description of the same in the Incident Report provided Petitioner with adequate notice of the charge against which he needed to defend himself. Petitioner's claim that he was deprived of an opportunity to prepare a defense to the "new modified alleged charge" notwithstanding, not only was the behavior that gave rise to the charge he was ultimately convicted of clearly described in the Incident Report, had Petitioner actually been convicted of both of those charges, he would have been sanctioned with far greater penalties,

---

and/or group activity; I.  Loss of job; J.  Impound inmate's personal property; K.  Confiscate contraband; L.  Restrict to quarters; M. Extra duty. BOP P.S.  5270.09, Inmate Discipline Program (emphasis added)

given that the sanction for two violations is obviously greater than that for only one, and one of Petitioner's original charges was a high level severity prohibited act with a potential sanction of the loss of up to 60 days of GCT; Petitioner was only sanctioned with the loss of 14 days of GCT. Finally, the undersigned finds it notable that Petitioner, when given the opportunity to call a staff representative and/or witness(es) on his behalf at the DHO hearing, chose not to call either, lending an inference to the conclusion that no witness or representative would support Petitioner's version of the event.

The Inmate Requests to Staff, or "cop-outs" that Petitioner attaches to his petition in support of his claim that prior to the DHO hearing, he was denied the opportunity to review the evidence to be used against him at the hearing in support of the charges are dated February 17, 2019 [ECF No. 1-2 at 1] and February 24, 2019. Id. at 2. In the February 17, 2019 cop-out, Petitioner contends that he has yet to receive a copy of the UDC paperwork . . . which includes . . . a copy of my rights staff rep request, UDC's recommendation, copy of my statement etc." See ECF No. 1-2 at 2.  However, at the time this was written, Petitioner had already received a copy of the Incident Report on January 18, 2019 [ECF No. 16-1 at 8]; the Incident Report contained the description of the incident, which was the reporting officer's statement, along with the pending charges and had already received a copy of the Inmate Rights Form, advising him of his rights, including the rights to a witness and staff representative, on January 22, 2019. See ECF No.16-1 at 11. Petitioner was obviously aware of what his own statement regarding the incident was, having been a participant in the January 22, 2019 UDC hearing; further, Petitioner was also well aware of the fact that the UDC recommended that the matter be referred to the DHO, given that Petitioner also received and signed for a copy of the Notice of Discipline Hearing Before the (DHO) the same day, which provided the UDC's conclusion that the same be done. ECF No. 16-1 at 13.

Petitioner's second attached cop-out also reiterates his same request for these items that he clearly already had. ECF No. 1-2 at 2.  That February 24, 2019 cop-out also requested a copy of Petitioner's "chronological disciplinary report and/or incident report history for inmate discipline which may reflect my status." ECF No. 1-2 at 2. Neither of the latter were necessary to prepare for the DHO hearing.

In Petitioner's third cop-out, attached to his response in opposition, is dated March 16, 2019, nearly three weeks after the DHO hearing. ECF No. 18-1 at 2.  In it, Petitioner alleges that he just reviewed his "Central File regarding the DHO packet for I.R. # 3214910" and the only evidence attached to support the written charge was a January 18, 2019 Memorandum for the Operations Lieutenant written by C. Jarvis,; he asks for confirmation that his attached quote from the same [see ECF No. 18-1 at 3] was what Jarvis' memo said, and seeks to confirm that no other documentation of the incident existed. See ECF No. 18-1 at 2.  The undersigned presumes that Petitioner attached this cop-to support his argument that the statement of a reporting officer alone is insufficient evidence to infer that a prohibited act was committed.  See Moore, *supra* at 266 F.3d 932 - 33. However, as noted by the Fourth Circuit,

> [t]he role of the district court is not to afford a *de novo* review of the DHO's factual findings. The district court should simply determine whether the decision was supported by some facts. The sole and only issue of constitutional substance is whether there exists any evidence at all, that is, whether there is any basis in fact to support the action taken by prison officials. Otherwise, the federal court would assume the task of retrying all prison disciplinary disputes.

See Melendez v. Masselieno, 2014 U.S. Dist. LEXIS 13372 *21 n.8 (D. Md. Feb. 4, 2014); see also Superintendent Mass. Corr. Inst., Walpole v. Hill, 472 U.S. at 455 (1985). Accordingly, the undersigned finds that the DHO's decision is supported by "some evidence."

The undersigned finds that all of Petitioner's arguments, as well as his sworn declaration and the FOIA documentation[10] he attaches to his response in opposition, appear to be merely attempts to build a paper trail to support Petitioner's claims that he was denied review of evidence and/or documentation before his DHO hearing, evidence and/or documentation that the record clearly reveals was already within his possession. See ECF Nos. 18-3, 18-4, and 18-5. Moreover, the copy of the January 18, 2019 Memorandum for Operations Lieutenant that Petitioner seizes on as proof of withheld evidence was reproduced *in toto* when it was copied/pasted in the January 18, 2019 Incident Report. *Cf.* ECF No. 18-5 at 15, ECF No. 16-1 at 8. There is no smoking gun.

Petitioner also challenges Respondent's contentions as to Petitioner's argumentativeness and insolence toward the officer during the January 18, 2019 incident, describing it as "complete vagueness" because Respondent failed to define what the word "this" meant in Petitioner's January 18, 2019 statement to the officer.[11] See ECF No. 18 at 13 - 14]. Petitioner's argument regarding the same is unavailing and does not merit any further consideration by the Court.

Finally, as for Petitioner's argument that "[i]t is clear policy prohibits a visual search to be conducted randomly, as a form of punishment and/or degrading tool," BOP P.S. 5521.06(2)(c) permits a visual inspection of all body surfaces and body cavities with or without an inmate's consent whenever "there is reasonable belief that contraband may be concealed on the person, or a good opportunity for concealment has occurred." Under the circumstances presented here, when Petitioner repeatedly defied staff orders to exit the shower and remained there for an extended time, staff was well within its rights to conduct the search; there is nothing in the record beyond

---

[10] The FOIA documentation reveals that Petitioner made similar requests for copies of documents already provided to him.

[11] "You want some more of **this**. You like **this**, don't you?" See ECF No. ECF No. 16-1 at 8 (emphasis added).

Petitioner's own unsupported conclusory allegation to suggest the search was done out of "vindictiveness" or for any other improper reason. Therefore, there was no due process violation, nor any Accardi Doctrine violation. There being no genuine issue of material fact, the undersigned finds that summary judgment should be granted to the Respondent.

## VI. Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's Motion to Dismiss or for Summary Judgment [ECF No. 15] be **GRANTED** and the petition [ECF No. 1] be **DENIED** and **DISMISSED with prejudice.**

Further, the undersigned **RECOMMENDS** that Petitioner's pending motion for writ of mandamus [ECF No. 10] be **DENIED as moot**.

The parties shall have **fourteen (14) days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to Martinez by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to transmit a copy electronically to all counsel of record.

DATED: November 24, 2020

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE